IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| YURIY HURALENKO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. EP-26-CV-1742-KC |
| | § | |
| WARDEN, ERO EL PASO CAMP | § | |
| EAST MONTANA et al., | § | |
| | § | |
| Respondent. | § | |

## ORDER

On this day, the Court considered Yuriy Huralenko's Petition for a Writ of Habeas Corpus, ECF No. 1.

## I.    BACKGROUND

On June 25, 2026, Huralenko filed his Petition. *Id*. Huralenko is a citizen of Ukraine who is subject to a 2013 final order of removal. *Id*. ¶¶ 16–18. He was also granted withholding of removal to Ukraine and cannot be removed there. *Id*. ¶¶ 2–3. On March 21, 2026, he was detained by immigration authorities. *Id*. ¶¶ 6, 19. Huralenko is detained at ERO El Paso Camp East Montana. *Id*. ¶ 1. He argues that his detention is unlawful and asks the Court to order his release. *Id*. ¶¶ 38–56.

On June 29, the Court ordered Respondents to show cause why the application for a writ of habeas corpus should not be granted. June 29, 2026, Order, ECF No. 3.

In answer to the Court's Show Cause Order, Respondents argue that Huralenko's detention is lawful. Resp. 1–5. Particularly, Respondents argue that Huralenko's removal is "significantly likely in the reasonably foreseeable future," because "[e]fforts are being made to remove [him]." *Id*. at 2. Respondents also provide a Declaration from Michael Robert Avalos

("Avalos Decl."), ECF No. 4-3, detailing their removal efforts "[s]ince the issuance of a final order of removal . . . on March 11, 2013." *Id.* ¶ 5. Huralenko has been placed in the "Third Country Removal (TCR) list" but "no third country has been nominated or agreed to accept [him]." *Id.* ¶ 6. Indeed, "as of July 2026, no third country has been identified." *Id.* ¶ 8. And Respondents "cannot move forward until headquarters finalizes a third country designation." *Id.* Thus, the anticipated timeline for his removal "remains uncertain." *Id.*

In all, during the last thirteen years, Respondents have not identified an alternative country for Huralenko's removal, and they do not provide a timeline for his removal. *See generally id.*

## II.    ANALYSIS

Huralenko seeks a writ of habeas corpus for his immediate release from custody or a bond hearing, arguing that his continued detention violates the Due Process Clause of the Fifth Amendment. Pet. 9–16.

This Court has previously held that a § 1231(a) detainee subject to re-detention after their release pursuant to an OSUP is not limited to a *Zadvydas* claim. *See Nguyen v. Bondi*, No. 3:25-cv-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) (citing *Trejo v. Warden of ERO El Paso E. Montana*, --- F. Supp. 3d ----, 2025 WL 2992187, at *6–7 (W.D. Tex. Oct. 24, 2025)). By virtue of the liberty interest obtained through their release, a § 1231(a) re-detainee can also bring a distinct procedural due process claim. *See id.* In *Nguyen*, this Court found a procedural due process violation where a Vietnamese national subject to a final order of removal, who had previously been deemed unremovable to Vietnam and released, was re-detained without an individualized assessment of his flight risk and dangerousness by an Immigration Judge ("IJ"). *See id.* at *5–8. The balance of the *Mathews v. Eldridge* factors weighed in favor of Nguyen

because he had a strong liberty interest, the risk of erroneous deprivation was high and easily ameliorated through a bond hearing, there was little evidence that he was a flight risk or danger to the community, and the Government failed to demonstrate that his removal was significantly likely in the reasonably foreseeable future. *See id.* Although the Government had submitted Nguyen's travel document request to Vietnam, it failed to provide an expected timeline for approval, did not attach copies of the submitted request, and the statistics it provided regarding successful removals of Vietnamese nationals did not identify whether any of these individuals, like Nguyen, were pre-1995 refugees. *See id.* at *7. Thus, after approximately three and a half months in detention, this Court ordered Respondents to either provide Nguyen with a bond hearing or release him. *See id.* at *1, 4, 8.

Here, Huralenko has been detained for about three and a half months and Respondents have not identified a country that he can be removed to, despite their assertions that they began seeking a third country back in 2013. *See generally* Avalos Decl. And they provide no expected timeline for identifying a country for removal, nor any description of their efforts to do so besides placing Huralenko on the third country removal list. *See generally id.* Whereas in *Nguyen*, Respondents at least offered statistics on removal and submitted a travel document request, here Respondents have done neither. Huralenko cannot be removed to Ukraine, since an IJ granted him withholding of removal to Ukraine. Respondents have identified no other country, and have no expected removal date. In short, Huralenko's removal was not possible for the last thirteen years, is not possible now, and "Respondents have not shown that his removal is significantly likely to occur in the reasonably foreseeable future." *See Nguyen*, 2025 WL 3120516, at *7 (citations omitted).

Thus, at this time, Respondents' interest in effectuating Huralenko's removal order is weak. *See id.* at *7–8. And any interest in preventing flight or danger is similarly weak, as Huralenko was previously released on an OSUP and there is no evidence in the record that he presents a flight risk or committed any crimes or endangered anyone since his release. *See id.* at *6. The Government's interest in re-detaining Huralenko is thus outweighed by his strong liberty interest from at least thirteen years of liberty in the United States, and the fact that the high risk of erroneous deprivation could be easily ameliorated by a bond hearing. *See id.* at *5–6.

While there is no doubt that Huralenko is subject to a final order of removal and that Respondents are entitled to remove him from the United States, when they have taken little action to effectuate that removal, they cannot continue to detain Huralenko without providing him with an individualized custody determination.

## III.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, **on or before July 22, 2026**, Respondents shall either: (1) provide Huralenko with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Huralenko's continued detention; or (2) release Huralenko from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before July 22, 2026**, Respondents shall **FILE** notice informing the Court whether Huralenko has been released from custody. If Huralenko has not been released from custody, Respondents shall inform the Court whether and

when a bond hearing was held in accordance with the preceding paragraph.  Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**IT IS FURTHER ORDERED** that if Huralenko is released from custody, Respondents shall **RETURN** all of his personal property in their custody to him upon release.  Such property includes, but is not limited to, identification documents.

**IT IS FURTHER ORDERED** that the Unopposed Motion to Substitute Party, ECF No. 5, is **GRANTED**.  The Clerk of Court shall add the Warden of the Otero County Processing Center as a Respondent.

**There will be no extensions of the July 22, 2026**, deadlines, unless they fall on a holiday, in which case, the deadlines are extended to the following business day.

**SO ORDERED**.

**SIGNED this 15th day of July, 2026.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE